No. 22-787, *SER The Delaware Tribe of Indians v. The Honorable Stacy Nowicki-Eldridge, et al.*

**FILED**

**June 12, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, dissenting:

This matter involves the question of whether the Indian Child Welfare Act, ("ICWA"), requires that proceedings regarding the placement of I.R. to be transferred to the District Court of the Delaware Tribe, ("tribal court"). In this case, I believe that the majority has mistakenly concluded that the circuit court erred in denying the Tribe's motion to transfer this action to the tribal court because of undue delay.[1]

The facts of this case highlight the complexities of the ICWA. It is undisputed that the circuit court was authorized to deny the Tribe's motion to transfer this case to tribal court if it appropriately found that good cause existed to deny the transfer. *See* 25 United States Code section 1911(b). The circuit court found that good cause existed "due to the advanced stages of this proceeding," and "the delay in the Delaware Tribe of Indians filing their motion to intervene and request for transfer of jurisdiction upon notice of the proceedings." The majority finds that circuit court erroneously relied upon the since-abrogated 1979 BIA Guidelines which, listed "advanced stage" and failure to file a "motion

---

[1] The circuit court alternatively determined that the Tribe's motion to transfer this matter to the tribal court should be denied pursuant to the Existing Indian Family Doctrine. The majority concludes the circuit court erred in relying on this doctrine and holds that the West Virginia does not follow the Existing Indian Family Doctrine. Because I believe that the circuit court correctly denied the Tribe's motion due to undue delay and the advance stage of the proceedings, I do not believe it was necessary for the Court to determine the applicability of the Existing Indian Family Doctrine.

1

to transfer promptly after receiving notice of the hearing" as situations constituting "good cause" to deny a motion to transfer. Although the 1979 Guidelines were abrogated and replaced by the 2016 Guidelines, I believe that under the 2016 Guidelines, the Tribe's delay in seeking transfer to the tribal court was still properly considered by and relied upon by the circuit court.

The majority correctly identifies that the term "good cause" is not defined in the ICWA. The majority also recognizes, however, that 25 C.F.R. § 23.118 provides a list of factors that may not be considered in making a good cause determination. Specifically, 25 C.F.R. § 23.118(c)(1) prohibits courts from considering:

> Whether the foster-care or termination-of-parental rights proceeding is at an advanced stage *if the Indian child's parent, Indian custodian, or Tribe did not receive notice of the child-custody proceeding until an advanced stage[.]* (emphasis added).

The majority found that the circuit court erred in finding good cause to deny the motion to transfer to the tribal court because it relied on the 1979 Guidelines instead of the 2016 Guidelines. However, a closer look at 25 C.F.R. § 23.118(c)(1) reveals that such rule is inapplicable here because the Tribe received notice of the proceeding prior to *"an advanced stage."*

The majority, relying on the 2016 Guidelines to 25 C.F.R. § 23.118(c)(1), states:

> Each individual proceeding will culminate in an order, so 'advanced stage' is a measurement of the stage within each proceeding."). This means that the circuit court should not

2

have based its decision on the fact that the case had been ongoing since January 2020—a span of nearly three-and-a-half years. Instead, the circuit court should have only considered whether the current phase, or proceeding, was at an advanced stage.

The majority determines that the current phase or proceeding, which it identifies as the "termination of Respondent Father's parental rights" stage, began with the filing of the DHHR's second amended petition in March 2022. It proceeds to find that this current proceeding is not at an advanced stage.

If the majority is correct that (1) this matter involves three separate stages or proceedings, (2) the relevant proceeding before us began in March 2022 with the filing of the amended petition, and (3) such proceeding is not at an "advanced stage", then clearly the prohibition set forth in 25 C.F.R. § 23.118(c)(1), on which the majority relies, does not come into play. Such prohibition on the circuit court's consideration of whether the proceeding is at an advanced stage only applies "if the Indian child's parent, Indian custodian, or Tribe *did not receive notice of the child-custody proceeding until an advanced stage*." (Emphasis added). Such is clearly not the case here.

As the majority expressly concludes, the Tribe became aware of the pendency of this case in December of 2021. Therefore, the Tribe become aware, not during an "advanced stage" of the present stage or proceeding, but in fact three months prior to the commencement of the current proceeding which began upon the filing of the March 2022 amended petition. Therefore, because the notice to the Tribe was not at an untimely "advanced stage," as outlined in 25 C.F.R. § 23.118(c)(1), such provision is inapplicable

3

and the circuit court was not precluded by such provision from considering whether the proceeding was at an advanced stage when it determined that good cause existed to deny the Tribe's motion to transfer.

The majority further finds that, regardless, the current "proceeding" was not at an advanced stage such as to justify the circuit court's finding of good cause to deny the motion to transfer. It relies heavily upon the fact that the Respondent Father had not yet been adjudicated when the Tribe filed its motion. However, I do not believe that the failure to have yet adjudicated the Respondent Father, who had repeatedly expressed his desire to voluntarily relinquish his parental rights, is determinative on the issue of whether the proceeding was at an advanced stage or whether the Tribe unduly delayed filing its motion for transfer of the action.

One need only review the long litany of events that took place between the date the Tribe learned of the proceedings and of the date it filed its motion to transfer in order to determine that its delay was unwarranted. After the Tribe became aware of the pendency of this case, and prior to the Tribe filing its motion to transfer, the following events occurred:

>    (1)    the DHHR filed an amended petition alleging that the Respondent Father abandoned I.R.;

4

(2)     an MDT meeting was held to address the allegations as well as concerns with A.S.'s ICPC report, and during that meeting, the Respondent Father indicated that he wished to voluntarily relinquish his parental rights;

(3)     a hearing was held on January 31, 2022, in which two separate motions to intervene were granted;

(4)     the Respondent Father failed to complete the voluntary relinquishment process;

(5)     a second amended petition was filed on March 1, 2022, after the Respondent Father failed to complete the voluntary relinquishment process;

(6)      a hearing was held on March 7, 2022, and the Tribe appeared and according to the majority, "intimated that [it] might seek to intervene pursuant to the ICWA."  During this hearing, the Respondent father again indicated his desire to voluntarily relinquish his parental rights.  Importantly, ***the Tribe was instructed to file a motion to intervene quickly if it desired to intervene in the proceedings***;

(7)     a cousin of the Respondent Father and his wife filed a motion to intervene;

(8)     a DHHR status review summary was filed on June 10, 2022, indicating that the DHHR was still pursuing abandonment on behalf of the Respondent Father;

(9)     the cousin of the Respondent Father and his wife filed a brief in support of their motion to intervene and for placement;

(10) a prior intervenor, A.S., filed a motion to join the motion to intervene filed on behalf of the Father's cousin and his wife;

(11) the GAL filed a brief regarding the applicability of the ICWA;

(12) the Respondent Father filed a brief in support of his cousin's motion to intervene;

(13) the foster parents filed a brief regarding the applicability of the ICWA; and,

(14) a DHHR Adjudicatory Summary was filed.

At the time the Tribe filed its motion to transfer to tribal court, it was aware that a hearing had been held on March 7, 2022, because it participated in the hearing. It was also on notice of the following: (1) the DHHR sought to terminate the parental rights of the Respondent Father; (2) a mediation had previously occurred; (3) the Respondent Father indicated his desire to voluntarily relinquish his parental rights and understood that if the relinquishment proceeded, he would no longer have a voice in the placement of I.R.; (4) the circuit court continued the matter to allow the Respondent Father to complete the voluntary relinquishment process; and, (5) the circuit court had instructed anyone seeking to participate in the matter to file a motion to intervene expeditiously.

Nonetheless, approximately **eight months** after it learned of the proceedings, and over **five months** after it participated in the March 7, 2022 hearing, the Tribe filed: (1) a motion to intervene; (2) a motion to invalidate all of the previously conducted proceedings dating back to when the court had reasonable cause to believe that I.R. was an

6

Indian child; and (3) a motion to transfer to tribal court. By that time, I believe that the proceeding had reached an advanced stage. The Tribe's delay simply cannot be justified. Indeed, "we have noted the harm that can accompany delays in abuse and neglect matters, finding that '[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.'" *In re S.L.*, 243 W.Va. 559, 566, 848 S.E.2d 634, 641 (2020) (quoting *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991)).

For these reasons, I believe the circuit court properly denied the Tribe's motion to transfer to the tribal court, and I respectfully dissent as to the majority's decision to grant the Tribe's petition for a writ of prohibition.